UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MATTHEW G. DLUHY,

                              Petitioner,

          vs.

                                                  9:03-CV-1153

WILLIAM MAZZUCA, Superintendent of                (J. Hurd)
Fishkill Correctional Facility
                              Respondent.
_____


MATTHEW G. DLUHY, Petitioner *Pro Se*
STEVEN H. SCHWARTZ, Assistant Attorney General of the State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging a judgment of conviction from the Ulster County Supreme Court.

Petitioner was convicted after a jury trial of Robbery, Second Degree on November

10, 1999.  On January 14, 2000, petitioner was sentenced to a determinate term of

eleven years of incarceration.  The Appellate Division, Third Department affirmed

the conviction on November 21, 2001.  *People v. Dluhy*, 288 A.D. 2d 693, 732

N.Y.S. 2d 724 (3d Dept. 2001).  The New York Court of Appeals denied leave to

appeal on February 21, 2002.  *People v. Dluhy*, 97 N.Y. 2d 728, 767 N.E. 2d 158

(2002).  Petitioner filed a petition for a writ of certiorari in the United States

Supreme Court.  On October 21, 2002, the Supreme Court denied that petition.

*Dluhy v. New York*, 537 U.S. 978, 123 S.Ct. 441 (2002).  Petitioner filed this federal

habeas action after the Supreme Court's denial of certiorari.  (Dkt. No. 1).

While this application for habeas corpus was pending, petitioner returned to

New York State court and filed a motion to vacate pursuant to N.Y. CRIM. PROC.

LAW § 440.10 "on the basis of newly discovered evidence."  Ulster County Supreme

Court denied the motion on March 17, 2004.  *People v. Dluhy*, March 17, 2004,

Ulster County Court (J. Bruhn).  The Appellate Division, Third Department and the

Court of Appeals denied motions for leave to appeal in June and August 2004,

respectively.  *People v. Dluhy* (Appellate Division, 3d Dept., June 8, 2004); *People

v. Dluhy*, 3 N.Y. 3d 673, 817 N.E. 2d 829 (2004) (Petitioner's Exhibit A at Dkt. No.

10).

On November 12, 2004, petitioner moved to supplement the pleadings in this

action.  (Dkt. No. 10).  Respondent filed a memorandum of law opposing the motion

in December 2004 (Dkt. No. 12), and petitioner filed a "traverse" in January 2005

(Dkt. No. 14).  This court granted the motion to amend the pleadings on April 25,

2005.  (Dkt. No. 15).  The amended petition was filed on May 25, 2005.  (Dkt. No.

16).

+9    Petitioner raises four grounds in support of his amended petition.

    1.  The conviction was obtained by the "use of evidence [a statement] obtained pursuant to an unlawful arrest."

    2.  The conviction was obtained by the use of a coerced and involuntary confession.

    3.  The conviction was obtained by violating "his Fifth Amendment right."

    4.  Petitioner's Sixth Amendment right to counsel was violated.

Respondent has filed an answer, a memorandum of law, and the pertinent state court records.  (Dkt. No. 19).  For the following reasons, this court will recommend denial of the petition.

## DISCUSSION

1.  **Facts**

On November 28, 1998, the Deli Grocery at Route 44/55 ("44/55 Deli") in Marlboro, New York was robbed.  The 44/55 Deli was equipped with video monitoring equipment that recorded the incident.  The owner  was in the stockroom when he realized that someone in the store had a gun.  (Trial Transcript ("T. 3"), included as Volume 3 in State Court Records, p. 60).  When he came out of the stockroom, the owner saw an individual lying on the floor, holding a gun.  (T.3, 60).[1]

---

[1]The proprietor testified " . . . the stockroom door was closed and I see some noise so I take a look in the monitor that I have right next to my desk and I see that like, you know, the person with the gun and I see some, notice like, you know, he running towards here . . . [another employee] was mopping the floor and someone holding the gun and you know, then I opened, I was just trying to get out, I opened the door and I see like, you know, [the employee] was right behind the door and someone was lying on the floor with a gun on his right-hand side."  (T. 3,

The owner testified that the suspect wore a mask, and that the suspect's face was not visible.  (T. 3, 61).  The only description that the proprietor could give was that the suspect appeared to be a white man, and that he had blue eyes.  (T. 3, 62).

In the days after the robbery, the police received a tip from an informant that petitioner had been involved in the robbery.  (Huntley Hearing Volume 1 ("H. 1"), (included in State Records in two volumes),  97).  *See also* Petitioner's Exhibit E at Dkt. No. 10.  On December 4, 1998, police officers from the Lloyd, Marlboro, and Poughkeepsie Police Departments apprehended petitioner at a residence in Poughkeepsie.  Accounts vary regarding what occurred at the Poughkeepsie residence, the circumstances surrounding petitioner's transport to the police station, and statements made at the police station.

Petitioner claims that no consent was given for police to enter the premises, and that he was removed from the premises handcuffed, without shoes, and shirtless. (Dkt. No. 16, 18-19).  He claims that his statements at the police station were coerced and involuntary.  (Dkt. No. 16, 18-19).  Petitioner's trial counsel moved to suppress petitioner's statements, and the trial court held a *Huntley*[2] hearing to resolve the question of whether the statements were admissible.  (H. 1, 3-4).

---

60).  It is unclear from the testimony who was running towards the stockroom door, but it seems likely that the suspect slipped and fell on the wet, just-mopped floor before the proprietor came out of the stockroom.

[2]*People v. Huntley*, 15 N.Y. 2d 72, 78, 255 N.Y.S.2d 838, 204 N.E.2d 173 (1965).

+9  After the *Huntley* hearing, the trial judge read his findings into the record. (H. 2, 145). The trial court found that the police officers entered the Poughkeepsie residence with the permission of the owner and a resident of the first floor apartment. (H. 2, 146). Police officers searched for and found petitioner in the basement of the residence. (H. 2, 146). Petitioner alleges that he was escorted from the building shirtless and handcuffed, however, the trial court made no findings of fact related to petitioner's condition as he was escorted from the residence and transported to the police station, except to say that it took approximately ten minutes. (H. 2, 146-47). The court found that police officers did not question petitioner during the ride from the Poughkeepsie residence to the police station. (H. 2, 147).

  The trial court found that after petitioner arrived at the police station, petitioner volunteered that he was involved in the incident prior to the police officers issuing *Miranda* warnings. (H. 2, 147).[3] The trial court also found that petitioner received *Miranda* warnings three times before he gave two more statements that detailed his involvement in the robbery: an oral statement recorded on audio tape, and a signed written statement. (H. 2, 147-48). Petitioner did not request to speak with an attorney, and he answered all of the officers' questions. (H. 2, 147-48). The trial court found that he "did not appear to be under the influence of alcohol or drugs" while at the police station. (H. 2, 148).

---

[3]A police officer testified that while in the hallway outside an interrogation room, petitioner acknowledged, "I know why I'm here - it's in reference to the robbery." (H. 1, 104).

+9      The court determined that "defendant was properly advised of his Miranda rights prior to the taken [sic] of either of the statements.  That he understood those rights and knowingly voluntarily and intelligently waived those rights.  I therefor [sic] find both statements to be voluntarily [given] in all respects . . .".  (H. 2, 150).  The court denied the defense motion to suppress the statements.  (H. 2, 150).

After a five day jury trial, Petitioner was convicted of Second Degree Robbery.  Petitioner's counsel filed an appeal in the Appellate Division, Third Department.  Petitioner's appellate counsel argued legal insufficiency of the evidence; that the petitioner was unable to form the specific intent to commit the crime; and that the confession should have been suppressed.  Brief of Appellant, June 1, 2001, included in State Court Records.  In affirming the conviction in November 2001, the Appellate Division commented that the use of handcuffs is not dispositive in determining whether an individual is in custody, or whether a statement was given while in custody.  *People v. Dluhy*, 288 A.D. 2d 693, 732 N.Y.S. 2d 724 (3d Dept. 2001).

The New York Court of Appeals denied leave to appeal on February 21, 2002.  *People v. Dluhy*, 97 N.Y. 2d 728, 767 N.E. 2d 158 (2002).  Petitioner filed a petition for a writ of certiorari in the United States Supreme Court.  On October 21, 2002, the Supreme Court denied that petition.  *Dluhy v. New York*, 537 U.S. 978, 123 S.Ct. 441 (2002).

After filing his petition in this court, petitioner filed a N.Y. Crim. Proc. Law

§ 440 motion in order to exhaust his Sixth Amendment claim at the state level.  The

Ulster County Supreme Court denied the motion on the basis of a state procedural

default.  *People v. Dluhy*, March 17, 2004, Ulster County Court, J. Bruhn

(Petitioner's Exhibit A to Dkt. No. 10).  The Appellate Division and the Court of

Appeals both denied petitioner's motions for leave to appeal in June and August

2004, respectively.  *People v. Dluhy*, June 8, 2004, Appellate Division, Third

Department; *People v. Dluhy*, 3 N.Y. 3d 673, 817 N.E. 2d 289 (2004) (Petitioner's

Exhibit A at Dkt. No. 10).  Petitioner was then granted leave to supplement the

pleadings in this action.  (Dkt. No. 15).

## 2.   **Petitioner's Confession**

Although petitioner appears to bring several different claims, he basically

argues that his confession should have been suppressed.  The separate claims are

merely separate constitutional bases to achieve the same result.  First, petitioner

claims that his confession should have been suppressed pursuant to the Fourth

Amendment as the result of an unlawful arrest.  Petitioner then attempts to claim that

his statements should have been suppressed because they were coerced or

involuntary under the Fifth Amendment.  Finally, petitioner claims that his

statements should have been suppressed because they were taken in violation of his

Sixth Amendment right to counsel.  The court will discuss each basis separately.

### A.  **Fourth Amendment Claim**

+9      It has been well-settled since *Stone v. Powell* that where the state affords a

defendant "an opportunity for full and fair litigation of a Fourth Amendment claim,

the Constitution does not require that a state prisoner be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or

seizure was introduced . . . [against him]."  *Stone v. Powell*, 428 U.S. 465, 482

(1976).  Evidence obtained as a result of a Fourth Amendment violation, including a

confession, is subject to the same analysis as the Fourth Amendment violation itself.

*Cardwell et al. v. Taylor*, 461 U.S. 571, 573 (1983).[4]  Fourth Amendment claims in

habeas petitions are reviewed only under certain circumstances: "(a) if the state has

provided no corrective procedures at all to redress the alleged Fourth Amendment

violations; or (b) if the state has provided a corrective mechanism, but the defendant

was precluded from using that mechanism because of an unconscionable breakdown

in the underlying process."  *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992) (citing

*Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir. 1977)).

Petitioner's first claim attacks the lawfulness of his arrest and claims that his

subsequent confession was the result of that arrest and therefore should have been

suppressed.  Petitioner fully availed himself of New York's corrective procedures for

---

[4]*Cardwell et al. v. Taylor* states that "[o]nly if the statements were involuntary, and therefore obtained in violation of the Fifth Amendment, could the federal courts grant relief on collateral review."  *Cardwell*, 461 U.S. at 573.  Where, as in *Cardwell*, statements are alleged to have been obtained in violation of the Fourth Amendment (e.g. after an illegal arrest), the Fourth Amendment analysis is necessary, and usually will result in a non-cognizable claim.

challenging Fourth Amendment violations.  His attorney moved to suppress petitioner's statements to the police, and the court held a *Huntley* hearing. Petitioner's motion to suppress was denied, and petitioner's counsel raised the issue again during the trial.  Petitioner had the same counsel that represented him at trial for his appeal, and counsel raised petitioner's "illegal arrest" and argued at every stage of the appeal that the confession should have been suppressed.

Petitioner does not allege or describe any "unconscionable breakdown" in the process, except to say that the issue was decided incorrectly.  "Indeed, the 'federal courts have approved New York's procedure for litigating Fourth Amendment claims . . . as being facially adequate."  *Capellan*, 975 F.2d at 70, n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) (citing *Gates v. Henderson*, 568 F.2d 830, 837 & n.4 (2d Cir. 1977) and *Shaw v. Scully*, 654 F. Supp. 859, 864 (S.D.N.Y. 1987))).  To the extent that petitioner challenges the admission of his confession as a violation of his Fourth Amendment rights, petitioner's claim may be dismissed as non-cognizable.

### B. <u>Fifth Amendment Claim</u>

#### i. **Discerning the Claim**

Petitioner next claims that his statements were coerced in violation of his Fifth Amendment rights.  Petitioner listed these claims in paragraphs 12(b) and 12(c) of the Petition, stating that his "conviction [was] obtained by the use of a coerced and

involuntary confession" and that the "conviction [was] obtained by a violation of his

Fifth Amendment right."  (Dkt. No. 16, Petition, ¶¶ 12(b) and 12(c)).[5]  Petitioner

stated in the accompanying Memorandum of Law that he "believe[d] it would be in

the interest of brevity to only include the two main grounds seeing that the four

grounds relied upon in the original petition are really all surrounding one issue."

(Dkt. No. 16, Memorandum, 2).  Petitioner, therefore, did not discuss the basis of his

claim that he was coerced into giving an involuntary confession in his Memorandum

of Law, and limited the discussion to the Fourth and Sixth Amendment claims.

Petitioner did, however, refer to a potential Fifth Amendment claim at a few

points in his Memorandum of Law.  Though he does not mention the Fifth

Amendment, petitioner's Statement of Fact includes several numbered paragraphs

that discuss when *Miranda* warnings were given (Dkt. No. 16, Memorandum, ¶ 21,

26, 31, 39, 40), details about petitioner's typed statement (Dkt. No. 16,

Memorandum, ¶ 27), what the officers and witnesses believed about his level of

intoxication (Dkt. No. 16, Memorandum, ¶¶ 27, 65), what clothing petitioner wore

during his apprehension (Dkt. No. 16, Memorandum, ¶¶50, 55, 63), and whether a

---

[5]In this section of the Report-Recommendation, the two parts of Docket Number 16 are
distinguished by noting whether the citation refers to the Petition or the Memorandum of Law.
Because petitioner submitted them together after he was granted leave to amend his petition, both
items appear as Docket Number 16 on the Docket Sheet.  Usually, the petition is submitted
before the Memorandum of Law.  This is the only section of the Report-Recommendation where
such a distinction is necessary–all other citations to Docket Number 16 refer to the Memorandum
of Law.

psychiatric expert believed petitioner could form "the specific intent to voluntarily confess on December 4, 1998." (Dkt. No. 16, Memorandum, ¶68).

In the Argument part of his memorandum, petitioner mentions the Fifth Amendment claim only in passing. He titled the first point of his argument "PETITIONER'S STATEMENT, WHILE COERCED AND INVOLUNTARY WAS ALSO MADE WHILE HE WAS IN CUSTODY AND MUST BE SUPPRESSED." (Dkt. No. 16, Memorandum, 16). The focus of this part of the memorandum is whether or not petitioner was in custody, or would have believed he was in custody. Petitioner discusses in detail whether the police used "a ruse to elicit incriminating statements without providing the Constitutionally required *Miranda* warnings." (Dkt. No. 16, Memorandum, 19). Petitioner cites two cases with facts that created a question of whether or not the suspect understood himself to be in custody. (Dkt. No. 16, Memorandum, 21-22). Despite the title of this section of petitioner's memorandum of law, the section itself does not assert any fact or make any argument that shows a coerced or involuntary confession, separate from petitioner's Fourth Amendment claim.

In the second point of the Argument section of petitioner's memorandum of law, petitioner argues primarily in support of his Sixth Amendment claim. However, petitioner parenthetically argues that an evidentiary hearing is necessary for a "totality of the circumstances assessment" related to his involuntariness claim. (Dkt.

No. 16, Memorandum, 31).  This is the only legal argument in the entirety of

petitioner's memorandum of law that is even remotely related to a Fifth Amendment

claim.

It is unclear on what basis petitioner relies for his Fifth Amendment claim.  It

seems that petitioner believes that because his apprehension was "illegal," his

confession was also illegal.  The court notes that petitioner makes only one statement

regarding the involuntariness of his confession, but asks the court to examine the

totality of the circumstances of his initial apprehension and eventual interrogation–

specifically, whether a reasonable person would have felt free to terminate the

interrogation and leave.  (Dkt. No. 16, Memorandum, 32).  This is not a Fifth

Amendment argument related to the coercion or involuntariness of a confession.

Petitioner has cloaked his Fourth Amendment claim in the terminology of a Fifth

Amendment violation.  For the reasons discussed in Section A above, petitioner's

Fourth Amendment claim is non-cognizable.

### ii.  Exhausting the Claim

To the extent that petitioner has raised a Fifth Amendment claim in his habeas

corpus action, the court will examine *sua sponte* whether he has properly raised his

claim[6].  The law is well-settled that prior to bringing a petition for habeas corpus

pursuant to 28 U.S.C. § 2254, a petitioner must exhaust his state court remedies with

---

[6]*See Lurie v. Wellner*, 228 F.3d 113, 123 (2d Cir. 2000) (court may consider exhaustion
sua sponte, absent *express* waiver by respondent).

respect to each claim presented in his federal application for habeas relief. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). The petitioner must "fairly present" his claims in each appropriate state court, alerting the court to the ***federal nature*** of the claim. *Baldwin*, 541 U.S. at 29 (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995)). The petitioner must have informed the state court of ***both*** the factual ***and*** legal premises of the claims that he is attempting to bring in federal court. *Id*.

As the Second Circuit has held, in order for a petitioner to "invoke one complete round of the State's established appellate review process," he must first appeal his conviction to the Appellate Division and then must seek further review of the conviction by applying for leave to appeal to the New York Court of Appeals. *Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (quoting *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005)). Applicants for leave to appeal must submit briefs and other documents to the Court of Appeals, identifying the issues upon which the application is based, and must focus upon identifying problems of reviewability and preservation of error. *Smith v. Duncan*, 411 F.3d at 345. The court found that it would undermine the principles of comity to consider a constitutional claim as to which no ruling was requested from the state court. *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

In this case, although respondent does not argue that petitioner failed to exhaust this claim, it appears that petitioner did not raise a Fifth Amendment claim in

13

the state in either the  Appellate Division or the Court of Appeals.  In the Appellate

Division, counsel made an exclusively Fourth Amendment argument related to the

confession:

> [t]he illegal and warrantless arrest and subsequent custodial
> interrogation, resulting in the confession, despite the *Miranda* warnings
> given just prior to the later taped confession, were all the result of an
> illegal warrantless search and seizure without probable cause, in
> violation of the Fourth Amendment.

(Appellant's Brief, included in the State Court records, 41).  Counsel also stated

"[t]ruly, Dluhy was coerced," but argued specifically that the coercion stemmed from

the fact that petitioner was subject to a custodial interrogation.  (Appellant's Brief,

46).  In the Application for Leave to Appeal, counsel again cast the claim of an

"illegal confession" as the "result of an illegal warrantless arrest . . . in violation of

the Fourth Amendment."  (Application for Leave to Appeal, included in the State

Court records, 3).

All of the briefs considered by all of the state courts present the issue of the

legality of the confession as part of a Fourth Amendment claim.  All of the state

courts viewed the inquiry as a question regarding the propriety of the arrest.  The

Appellate Division, the last court to look at the merits of petitioner's claims, decided

the issue based on a Fourth Amendment question regarding the use of handcuffs.

*People v. Dluhy*, 288 A.D. 2d 693, 732 N.Y.S. 2d 724 (3d Dept. 2001), citing *People

v. Allen*, 73 N.Y.2d 378, 380, 538 N.E.2d 323, 324 (1989). No Fifth Amendment

claim was raised as a separate, federally based claim in any state court.  The issue

simply has not been fairly presented to the New York courts, and has not been

exhausted.

### iii.  Procedural Default

If petitioner has not exhausted his state court remedies, but no longer has

remedies available in state court with regard to these claims, they are "deemed"

exhausted but are also procedurally defaulted.  *Bossett v. Walker*, 41 F.3d 825, 828

(2d Cir. 1994) (citing *Grey*, 933 F.2d at 120-21), *cert. denied*, 514 U.S. 1054 (1995).

A state prisoner who has procedurally defaulted on a federal claim in state court is

entitled to federal habeas review of that claim only if he can show both cause for the

default and actual prejudice resulting from the alleged violation of federal law, or

establish that failure of the court to consider the claim will result in a miscarriage of

justice.  *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991).  A miscarriage of

justice occurs if the constitutional violation has "probably resulted in the conviction

of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

In this case, petitioner may not return to state court for consideration of this

claim.  He failed to raise the issue in the Appellate Division, and has already had his

one opportunity for appeal to the New York Court of Appeals.  *See Grey*, 933 F.2d at

120.  Because petitioner cannot return to state court, he has not only failed to exhaust

his claim, but has also procedurally defaulted on his Fifth Amendment claim.

+9    Federal courts may address the merits of a claim that was procedurally

defaulted in state court upon a showing of cause for the default and prejudice to the

petitioner. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977); *Bosset*, 41 F.3d at 829 (2d

Cir. 1994). When petitioner is not able to show cause for the procedural default, the

court need not decide the issue of prejudice, because in order to qualify for habeas

review under this exception, petitioner must demonstrate **both** cause and prejudice.

*Long v. Lord*, 03-CV-461, 2006 U.S. Dist. LEXIS 50439, *17-18 (N.D.N.Y. March

21, 2006) (citing *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985)).

Thus, this court must proceed to an analysis of whether petitioner has shown

cause and prejudice for the default on this claim.  Petitioner has not suggested any

reason for his failure to raise this claim in the Appellate Division or the New York

Court of Appeals.  Petitioner was represented by the same counsel at trial and on

appeal.  In fact, counsel was involved in the case from prior to the *Huntley* hearing

until the denial of the Application for Leave to Appeal by the Court of Appeals.

Counsel was not required to raise a Fifth Amendment claim, indeed, there are many

reasons why counsel may have chosen not to do so.  There are no facts establishing a

Fifth Amendment claim, nor has any reason for the default on this claim been raised

here.  Since petitioner has not established cause for his procedural default concerning

these claims, this court need not decide whether he suffered prejudice.  *Lord*, *supra*.

Absent cause and prejudice, the court may also excuse a procedural default if

petitioner can show that the failure to review his claims would result in a fundamental miscarriage of justice in that petitioner was "actually innocent." *Sawyer v. Whitely*, 505 U.S. 333, 339 (1992), *see also Murray*, 477 U.S. at 496.  To invoke this exception, the petitioner must show "factual innocence," not mere "legal sufficiency," and must present ***new and reliable evidence*** to show that it is "more likely than not" that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Moore v. Greiner*, 02 Civ. 6122, 2005 U.S. Dist. LEXIS 24184, *35-37 (S.D.N.Y. 2005) (citations omitted).  In this case, petitioner has presented no new or reliable evidence.  In fact, petitioner has not presented ***any*** evidence regarding the issue of innocence.

The court finds that petitioner has not shown cause and prejudice for his failure to bring his Fifth Amendment claim in the New York state courts, and that failure to review this claim will not result in a fundamental miscarriage of justice. This court finds that the Fifth Amendment claim may be "deemed" exhausted, but finds that consideration of this claim is barred by procedural default.

## C. <u>Sixth Amendment Claim</u>

Petitioner makes two claims that his statements were taken in violation of his constitutional right to counsel.  The first claim is that at the time he made his statements, petitioner "was represented by counsel on an unrelated charge in Ulster county, including a traffic infraction in the Town of Lloyd."  (Dkt. No. 16, 23).

Petitioner cites Article 1, Section 6 of the New York State Constitution, as well as two New York state cases, for the proposition that "the indelible right to counsel" attaches "once an arrest is authorized." (Dkt. No. 16, 22). Petitioner argues that because he had retained counsel on the unrelated matter, his right to counsel on the newer burglary charge had already attached, and police should not have questioned petitioner without counsel. (Dkt. No. 16, 31).

The second claim alleges that the Town of Lloyd issued an arrest warrant in advance of the events at the residence in Poughkeepsie. Petitioner argues that the issuance of an arrest warrant is a "critical stage" of a criminal prosecution, and that his Sixth Amendment right to counsel attached when the warrant was issued. Therefore, petitioner argues, his right to counsel was violated because questioning began outside the presence of his attorney, at a "critical stage" of the proceeding.

### i. Indelible Right to Counsel

With respect to petitioner's argument regarding his representation by counsel on another charge, the court notes that "a district court is 'limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" *Beekman v. Lacy* 918 F. Supp. 57, 63 (N.D.N.Y., 1996) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)). *See also* 28 U.S.C. § 2254(a). The particular right to counsel that petitioner asserts here arises under New York law. *Beekman*, 918 F. Supp. at 63. In this area, it is well-settled that the New York rule is broader

18

than the federal rule, and cannot be a basis for relief under 28 U.S.C. 2254.  *Id.  See also*, *Key v. Artuz*, 2002 U.S. Dist. LEXIS 17712, *12 (E.D.N.Y., 2002) (alleged Sixth Amendment violation based on representation on unrelated charge not cognizable on federal habeas review); *Ballew v. Walker*, 1999 U.S. Dist. LEXIS 22511, *11 (W.D.N.Y., 1999) (no "indelible" right to counsel based on representation on prior pending charge) (*citing United States v. Broccolo*, 797 F. Supp. 1185, 1196 (S.D.N.Y., 1992)).

In *Texas v. Cobb*, the Supreme Court stated that the "Sixth Amendment right to counsel is personal to the defendant and specific to the offense."  *Texas v. Cobb*, 532 U.S. 162, 172 (2001).  Even if petitioner had been represented on an unrelated, prior charge at the time he made his statements to police, it would not be a basis for claiming a violation of petitioner's federal Sixth Amendment right to counsel.  The federal rule permits the questioning of petitioner while he is represented on an unrelated charge.  *McNeil v. Wisconsin*, 501 U.S. 171 (1991).  Thus, petitioner's Sixth Amendment claim, based solely on New York law, may be dismissed as non-cognizable.

### ii.  Arrest Warrant

Petitioner's second Sixth Amendment argument is based on the "recent discovery of [an] arrest warrant" that was issued from the Town of Lloyd on the same day that petitioner gave his statement to police.  (Dkt. No. 16, 26).  Petitioner's

allegation is that the warrant was issued before police officers went to the

Poughkeepsie residence to question petitioner.

Petitioner's attorney did not raise this issue on direct appeal to the Appellate

Division or the Court of Appeals.  Petitioner did not raise this issue until after he

filed the original petition in this court.  This court has not been provided with the

motion papers, but petitioner did attach the state court's CRIM. PROC. LAW § 440.10

decision to his motion to supplement the pleadings in this court.  (Exhibit A, Dkt.

No. 10).

On March 17, 2004, the Ulster County Supreme Court found that petitioner

did not submit "any evidence which is 'new' within the meaning" of the statute.

*People v. Dluhy*, March 17, 2004, J. Bruhn (Petitioner's Exhibit A at Dkt. No. 10).

The court stated that petitioner's arguments were "either determined on the merits of

his appeal . . . or were unjustifiably not raised . . .." *Id*.  On June 8, 2004, the

Appellate Division denied leave to appeal the Ulster County Court order.  *People v.

Dluhy*, June 8, 2004, Appellate Division, Third Department, J. Rose (Petitioner's

Exhibit A at Dkt. No. 10).  The Court of Appeals rejected petitioner's application for

leave to appeal in August 2004.  *People v. Dluhy*, 3 N.Y. 3d 673, 817 N.E. 2d 829

(2004) (Petitioner's Exhibit A at Dkt. No. 10).  Defendant argues that this claim is

procedurally barred.

It is well settled that federal courts will not consider federal claims decided in

state court "if [the state court] judgment rests on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989).  Under *Harris v. Reed*, "a federal claimant's procedural default precludes federal habeas review, like direct review, only if the last state court rendering a judgment in the case rests its judgment on the procedural default." *Harris v. Reed*, 489 U.S. at 262.  Furthermore, as stated above, a state prisoner who has procedurally defaulted on a federal claim in state court is entitled to federal habeas review of that claim ***only*** if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can establish that failure of the court to consider the claim will result in a miscarriage of justice.  *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991).  A miscarriage of justice will have occurred if the constitutional violation has "probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Here, the Ulster County Supreme Court found that petitioner had not submitted "new" evidence, and that petitioner's arguments were "either determined on the merits of his appeal . . . or were unjustifiably not raised . . .." *People v. Dluhy*, March 17, 2004, J. Bruhn (Petitioner's Exhibit A at Dkt. No. 10).  Because petitioner's Sixth Amendment claim was ***not*** raised on appeal, the § 440.10 court must have found that petitioner's failure to raise the issue was "unjustified."

Therefore, the denial of petitioner's Sixth Amendment claim was based on a procedural default.

Petitioner argues that the "cause" for his default is that the arrest warrant was not disclosed to his counsel in advance of trial.  However, Ulster County Supreme Court did not find petitioner's late discovery of the warrant a justifiable reason for the default, and the Appellate Division and Court of Appeals declined to review the decision.  This court will not disturb the state courts' finding.  Since petitioner has not established cause for his procedural default concerning this claim, this court need not decide whether he suffered prejudice.  *Lord*, *supra*.  Petitioner has made no allegation of his actual innocence.  Thus, petitioner's Sixth Amendment challenges to his conviction may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of*

*Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1);

Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: May 15, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge